DONALD F. ZIMMER, JR. (State Bar No. 112279)
KRISTA L. COSNER (State Bar No. 213338)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
SMITHKLINE BEECHAM CORPORATION dba
GLAXOSMITHKLINE and McKESSON
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLYN PRUITT as personal representative of JOHN T. PRUITT (deceased); CHARLOTTE MOYER as personal representative of LEO F. MOYER (deceased); and LOLA McCLINTOCK as personal representative of JAMES McCLINTOCK (deceased),<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE; and McKESSON CORPORATION,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL AND REMOVAL ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY) and 28 U.S.C. § 1441(C) (FEDERAL QUESTION) OF DEFENDANT SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE** |

**TO THE CLERK OF THE COURT:**

Defendant SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE ("GSK"), hereby removes to this court the state action described below. Removal is warranted under 28 U.S.C. § 1441 because this is an action over which this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1332.

I. **BACKGROUND**

1. On February 22, 2008, Plaintiffs Carolyn Pruitt as personal representative

of John T. Pruitt (deceased), Charlotte Moyer as personal representative of Leo F. Moyer (deceased), and Lola McClintock as personal representative of James McClintock (deceased) ("Plaintiffs"), represented by The Miller Firm of Orange, Virginia, commenced this action in the Superior Court of the State of California for the County of San Francisco. A true and correct copy of the Complaint in the action is attached as Exhibit "A" to the Declaration of Krista L. Cosner in Support of Notice of Removal and Removal Action under 28 U.S.C. § 1441(b) (Diversity) and 28 U.S.C. § 1441(c) (Federal Question) of Defendant SmithKline Beecham Corporation dba GlaxoSmithKline (hereinafter "Cosner Decl.").

2. Defendants filed their answer to Plaintiffs' Complaint on March 25, 2008. A true and correct copy of the Answer in the action is attached as Exhibit "B" to Cosner Decl. There have been no other proceedings in the state court action. Cosner Decl. ¶ 3.

3. This is one of many cases that have been filed recently in both federal and state court across the country involving the prescription drug Avandia®. Cosner Decl. ¶ 6. Plaintiffs' counsel, The Miller Firm, has filed Avandia cases in both state and federal courts, but only in the cases filed in California has The Miller Firm named McKesson, or any distributor, as a defendant. Cosner Decl. ¶ 7.

4. On October 16, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order directing that then-pending Avandia-related cases be transferred and coordinated for pretrial proceedings in the United States District Court for the Eastern District of Pennsylvania, before the Honorable Cynthia M. Rufe, pursuant to 28 U.S.C. § 1407. *See* Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (E.D.P.A.) (a true and correct copy of which is attached as Exhibit "C" to Cosner Decl.). Additional Avandia-related cases pending in federal court, which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Rufe, are treated as potential tag-along actions. *See id*.; *see also* Rules 7.4 and 7.5, R.P.J.P.M.L. 199 F.R.D. 425, 435-36 (2001). GSK intends to seek the transfer of this action to that Multidistrict Litigation, *In re*

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\396292\1

NOTICE OF REMOVAL AND REMOVAL

2

CASE NO.

*Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, and shortly will provide the JPML with notice of this action pursuant to the procedure for "tag along" actions set forth in the rules of the JPML. Cosner Decl. ¶ 8.

5. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because GSK has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

## II.  DIVERSITY JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.  Diversity Of Citizenship

7. The Complaint names three plaintiffs as personal representatives for deceased individuals. *See* Cosner Decl., Exh. A, ¶¶ 10-12:

    a. Plaintiff, Carolyn Pruitt, is a citizen of the State of Illinois. *See* Cosner Decl., Exh. A, ¶ 10.

    b. Plaintiff, Charlotte Moyer, is a citizen of the State of California. *See* Cosner Decl., Exh. A, ¶ 11.

    c. Plaintiff, Lola McClintock, is a citizen of the State of California. *See* Cosner Decl., Exh. A, ¶ 12.

8. GSK is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and therefore, is a citizen of Pennsylvania for purposes of determining diversity. 28 U.S.C. § 1332(c)(1). Cosner Decl. ¶ 9.

9. For the reasons set forth below, the remaining named defendant—McKesson Corporation, a Delaware corporation, with its principal place of business in San Francisco, California (*see* Declaration of Greg Yonko, ¶ 3, attached as Exhibit "D" to Cosner Decl.) is fraudulently joined in this lawsuit and its citizenship must be ignored for

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\396292\1

NOTICE OF REMOVAL AND REMOVAL

3

CASE NO.

the purpose of determining the propriety of removal.[1] *See McCabe v. General Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987); *Waldon v. Novartis Pharmaceuticals Corp.*, 2007 U.S. Dist. LEXIS 45809 (N.D. Cal. June 18, 2007). Accordingly, there is complete diversity of citizenship and the forum defendant rule is not implicated in this case.

### B. The Amount In Controversy Requirement Is Satisfied

10. It is apparent on the face of the Complaint that Plaintiffs seek an amount in controversy in excess of $75,000, exclusive of costs and interest.

11. Plaintiffs allege that as a result of their Avandia use, the decedents "suffered heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest and sustained physical and financial damages including pain and suffering." *See* Cosner Decl. Exh. A, ¶ 35.

12. Plaintiffs claim their decedents "suffered severe and permanent physical injuries," "endured substantial pain and suffering," "underwent extensive medical and surgical procedures," "incurred significant expenses for medical care and treatment," and "lost past earnings and have suffered a loss of earning capacity." Cosner Decl. Exh. A, ¶ 164.

13. Plaintiffs seek to recover trebled compensatory damages; physical pain and suffering; restitution of all purchase costs for Avandia and disgorgement of profits; amounts for loss of earnings and loss of earning capacity, as well as punitive and exemplary damages. *See* Cosner Decl. Exh. A, Prayer for Relief.

14. Punitive damages are included in the calculation of the amount in controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

15. Given the allegations set forth above, the face of the Complaint makes clear

---

[1] GSK notes that the California citizenship of Charlotte Moyer and Lola McClintock is not diverse from that of McKesson. However, as set forth, the citizenship of McKesson must be ignored because McKesson is a fraudulently joined defendant. When McKesson's citizenship is disregarded, there is complete diversity of citizenship.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\396292\1

NOTICE OF REMOVAL AND REMOVAL

4

CASE NO.

that Plaintiffs seek an excess of $75,000, exclusive of interest and costs. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

### C. The Citizenship Of McKesson Must Be Ignored Because McKesson Is Fraudulently Joined

16. A defendant is fraudulently joined, and its presence in the lawsuit is ignored for purposes of determining diversity, "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also Hamilton Materials, Inc. v. Dow Chemical Corporation*, 494 F.3d 1203, 1206 (9th Cir. 2007).

17. McKesson is fraudulently joined because Plaintiffs have failed to make any material allegations against it. *See Brown v. Allstate Ins.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations against [the in-state defendants] are made"). Plaintiffs specifically allege that Avandia was created and marketed by GSK; that GSK had longstanding knowledge of Avandia-related dangers which GSK failed to adequately warn and disclose to consumers; that GSK concealed, suppressed and failed to disclose these referenced dangers; that GSK has represented and has continued to represent that it manufactures and/or sells safe and dependable pharmaceuticals; that GSK has failed to adequately warn or inform consumers, such as Plaintiffs' decedents or Plaintiffs' decedents' prescribing physicians of known defects in Avandia; and that as a result of GSK's omissions and/or misrepresentations, Plaintiffs' decedent ingested Avandia. *See* Cosner Decl. Exh. A, at ¶¶ 23:23, 27, 28:12-15, 34, 35:3-4

18. Plaintiffs fail to make any specific material assertions against McKesson, and do not allege that the decedents ingested Avandia that was distributed by McKesson, compelling the conclusion that Plaintiffs have fraudulently joined McKesson in an attempt to defeat diversity jurisdiction. *See e.g., Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 U.S. Dist. LEXIS 18365 (S.D. Ala. 1997) (holding that

there is "no better admission of fraudulent joinder of [the resident defendant]" than the failure of the plaintiffs "to set forth any specific factual allegations" against them). Plaintiffs cannot cure this deficiency by relying, as they do in the balance of their complaint, on allegations directed towards "Defendants."

19. In the body of the Complaint, Plaintiffs assert claims of: (1) negligence; (2) negligent failure to adequately warn; (3) negligence per se; (4) negligent misrepresentation; (5) breach of express warranty; (6) breach of implied warranty; (7) strict products liability—defective design; (8) strict products liability—manufacturing and design defect; (9) strict products liability—failure to adequately warn; (10) fraudulent misrepresentation; (11) violations of the Consumer Legal Remedies Act, Civil Code §1750, *et seq.* and California Business and Professions Code § 17200, *et seq.*; (12) unjust enrichment; (13) wrongful death; (14) survival action; (15) loss of consortium; and (16) punitive damages. In these allegations, Plaintiffs aver that collectively, "Defendants" or "Defendants GSK and McKesson," defectively designed and manufactured Avandia and made misrepresentations about the drug; failed to adequately and properly test and inspect Avandia; failed to use reasonable care in the labeling, marketing, selling, advertising and promoting of Avandia; concealed known risks and failed to provide adequate warnings and labeling. All of these claims are substantively based on the design and manufacture of Avandia, the adequacy of pre-clinical testing and post-marketing surveillance, failure to warn, fraudulent concealment, and misrepresentation. As a wholesale distributor of Avandia, McKesson played no role in its promotion, marketing or advertising. All McKesson did was pass along unopened boxes of Avandia, in unadulterated form, to hospitals and other businesses in the healthcare industry. *See* Cosner Decl. Exh. D, ¶¶ 6-7.[2]

---

[2] The Declaration of McKesson's representative, Greg Yonko may be considered by the Court in determining whether McKesson is fraudulently joined. *Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D. Cal. 2006) ("[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available") (citing *Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979) ("it is well settled that upon allegations of fraudulent joinder…federal courts may look beyond

20.  Further, based on the "learned intermediary" doctrine, McKesson bore no duty to warn Plaintiffs. The "learned intermediary" doctrine, the foundation of prescription drug product liability law, provides that the duty to warn about a drug's risks runs from the manufacturer to the physician (the "learned intermediary"), and then from the physician to the patient. *See Brown v. Superior Court (Abbott Labs.)*, 44 Cal. 3d 1049, 1061-62, n.9 (1988); *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal. 4th 1104, 1116 (1996). It is the physician, and only the physician, who is charged with prescribing the appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44 Cal. 3d at 1061-62.

21.  GSK and the FDA prepared the information to be included with the prescription drug, Avandia, with the FDA having final approval of the information that could be presented. Once the FDA has determined the form and content of the information, it is a violation of federal law to augment the information. *See* 21 U.S.C. §331(k) (prohibiting drug manufacturers and distributors from causing the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling" of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal.3d 1049, 1069 n.12 (noting that the FDA regulates the testing, manufacturing, and marketing of drugs, including the content of their warning labels). Therefore, any safety and warning information McKesson had about Avandia would have come from GSK in the form of FDA-approved packaging and labeling. McKesson could not change the labeling it was given by GSK as approved by the FDA without violating federal law. No duty can be found where it requires a party to violate the law to fulfill it.

22.  As such, given the lack of a causal connection between the injuries alleged by Plaintiffs and McKesson's conduct, as well as the absence of any legal or factual basis for Plaintiffs' claims against McKesson, McKesson's joinder is fraudulent and its

---

the pleadings to determine if the joinder…is a sham or fraudulent device to prevent removal")). *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) (evidence may be presented by the removing party that there is no factual basis for the claims pleaded against the local defendant).

citizenship should be ignored for purposes of determining the propriety of removal.

## III. FEDERAL QUESTION JURISDICTION

23. This Court has federal question jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005).

24. As more fully explained below, Plaintiffs have made violations of federal law critical elements of several of their claims.

### A. Plaintiffs' Claims Require Construction And Application Of The FDCA And Its Implementing Regulations

25. Count III of Plaintiffs' Complaint, "Negligence Per Se," explicitly alleges that defendants violated federal law. Plaintiffs' claim, *inter alia,* that "[d]efendants "violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301 *et seq.,* related amendments and codes and federal regulations provided thereunder, and other applicable laws, statutes, and regulations." *See* Cosner Decl. Exh A, ¶ 59.

26. Plaintiffs further claim that "[d]efendants' acts constitute an adulteration and/or misunderstanding [*sic*] as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331...." *See* Cosner Decl. Exh A, ¶ 61.

27. Moreover, Count II of the Plaintiffs' Complaint, "Negligent Failure to Adequately Warn," and Count IX, "Strict Products Liability – Failure to Adequately Warn," also require construction and application of the FDCA and implementing federal regulations, which govern approval of prescription drugs and regulate prescription drug manufacturers' public and promotional statements, including all aspects of warnings and labeling.

28. As a currently-marketed prescription drug, Avandia is subject to extensive regulation by the FDA. The FDCA requires the FDA to ensure that "drugs are safe and effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and officially reviewing clinical research and taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b)(1). The Secretary of the FDA has the authority

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\396292\1

NOTICE OF REMOVAL AND REMOVAL

8

CASE NO.

to promulgate regulations to enforce the FDCA, which are codified in the *Code of Federal Regulations*, 21 C.F.R. § 200, *et seq*. *See* 21 U.S.C. § 371(a).

29. To accomplish its purpose, the FDA maintains a Center for Drug Evaluation and Research (the "CDER"). The CDER regulates pharmaceutical companies' development, testing and research, and manufacture of drugs. The CDER examines data generated by these companies to conduct a risk/benefit analysis and make an approval decision. The CDER also ensures truthful advertising for prescription drugs, in part by approving Package Inserts that properly outline benefit and risk information. Once drugs are marketed, the CDER continues to monitor them for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. In short, the CDER evaluates and monitors the effectiveness and safety of prescription drugs. *See* http://www.fda.gov/cder/about/faq/default.htm.

30. Promotional communications to physicians about Avandia are contained within, and restricted by, warning, labeling, and promotional materials, such as the Package Insert, that are approved and monitored by the FDA to ensure the provision of accurate information about the drug's respective risks and benefits. Under federal regulations, even claims in promotional labeling or advertising must be consistent with approved labeling. 21 C.F.R. § 202.1(e)(4) (2005).

31. The FDA's responsibility to regulate prescription drugs sold in the United States, and to enforce laws with respect to such drugs, inclusive of the precise content and format of prescription drug labeling (*e.g.*, the instructions, warning, precautions, adverse reaction information provided by manufacturers, and marketing materials), is plenary and exclusive. *See* 21 U.S.C. § 301, *et seq*

32. Plaintiffs have explicitly alleged violations of federal law in their "Negligence Per Se" claim, and have made alleged violations of federal law a critical element of their "Negligent Failure to Adequately Warn" and "Strict Products Liability – Failure to Adequately Warn" claims. Accordingly, Plaintiffs' claims necessarily raise substantial federal questions by requiring the Court to construe and apply the FDCA and

its implementing regulations.

### B. Federal Control Of Drug Labeling And Warning

33. On January 24, 2006, the FDA announced a rule that includes a detailed and emphatic statement of the FDA's intention that its regulation and approval of prescription drug labeling preempt most state law claims related to the adequacy of prescription drug warnings because such claims frustrate "the full objectives of the Federal law." *See* Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products, 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006) ("FDA believes that under existing preemption principles, FDA approval of labeling under the act. . . . preempts conflicting or contrary State law."). *See also In re Bextra and Celebrex Marketing,* 2006 WL 2374742 (N.D. Cal., August 16, 2006) (Celebrex decision); *In re Bextra and Celebrex Marketing,* 2006 WL 2472484 (N.D. Cal., August 24, 2006) (Bextra decision).

34. Plaintiffs allege that GSK failed to disclose certain risks of Avandia. *See e.g.,* Cosner Decl. Exh. A, ¶ 27:7-9. This allegation necessarily requires Plaintiffs to establish that the FDA, which has exclusive jurisdiction over the labeling of drugs, would have approved the warning the Plaintiffs allege should have been given.

35. Accordingly, there is a substantial federal question with respect to whether Plaintiffs can claim that GSK violated state law in light of the FDA's control of Avandia's labeling and warning and its position on conflict preemption.

### C. The Federal Interest In Providing A Forum

36. The federal government has a strong interest in having a federal court decide several of the issues in this case. Among these issues are:

    a.    whether any conduct of GSK violated any federal laws or regulations related to the labeling and marketing of Avandia; and

    b.    whether the FDA-approved Avandia label was false and misleading, as alleged by Plaintiffs, and whether a state may impose liability on GSK for not providing more information regarding alleged risks, as

Plaintiffs contend GSK should have done.

37.  Plaintiffs' claims may be vindicated or defeated only by construction of federal statutes and regulations. The availability of a federal forum to protect the important federal interests at issue is therefore consistent with *Grable*, and determination by a federal court of the substantial and disputed federal issues that lie at the heart of this case would not "disturb any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368.

## IV. CONFORMANCE WITH PROCEDURAL REQUIREMENTS

38.  This Court has jurisdiction over this matter based on federal question and diversity of citizenship, and the present lawsuit may be removed from the Superior Court of the State of California for the County of San Francisco, and brought before the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331, 1332 and 1441.

39.  GSK and McKesson were served with Plaintiffs' Complaint on February 28, 2008. Cosner Decl. ¶ 10. Therefore, this Removal has been timely filed within 30 days of service, pursuant to 28 U.S.C. § 1446(b).

40.  All of the properly joined and served defendants consent to removal. McKesson's consent to remove is not necessary because it is fraudulently joined. *See, e.g., Easley v. 3M Company, et al.*, 2007 WL 2888335 (N.D. Cal. 2007) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)).

41.  The United States District Court for the Northern District of California is the federal judicial district encompassing the Superior Court of the State of California for the County of San Francisco, where this suit was originally filed. Venue therefore is proper in this district under 28 U.S.C. § 1441(a).

42.  Pursuant to the provisions of 28 U.S.C §1446(d), GSK will promptly file a copy of this Notice of Removal with the clerk of the Superior Court of the State of California for the County of San Francisco, where this suit was originally filed.

43.  Defendant reserves the right to amend or supplement this Notice of

1  Removal.

2  **WHEREFORE**, GSK respectfully removes this action from the Superior Court of
3  the State of California for the County of San Francisco to the United States District Court
4  for the Northern District of California, pursuant to 28 U.S.C. § 1441.

Dated: March 26, 2008

DRINKER BIDDLE & REATH LLP

/s/ Anette Stemmer for CR
DONALD F. ZIMMER, JR.
KRISTA L. COSNER

Attorneys for Defendants
SMITHKLINE BEECHAM
CORPORATION dba
GLAXOSMITHKLINE and McKESSON
CORPORATION

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\396292\1

NOTICE OF REMOVAL AND REMOVAL                                    CASE NO.

12